IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ADOBE SYSTEMS,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA G. JAMES,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY AND ADMINISTRATIVELY CLOSING CASE<br><br><br><br>Case No. 2:10-CV-1228 TS |

I. INTRODUCTION

Defendant Joshua James (James), a former employee of Plaintiff Adobe, moves to dismiss or stay this case in favor of the case he filed against Adobe in California state court based on the *Younger*[1] abstention doctrine and/or the *Colorado River*[2] doctrine. Adobe opposes the Motion based on its position that this is Utah-centered dispute, that James agreed to suit in Utah in a forum selection clause in one of the two contracts at issue, and

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

[2] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

1

that neither abstention doctrine applies. The parties also trade accusations of forum shopping.

The Court finds that the two related contracts that form the basis of the dispute have conflicting, but permissive venue and forum selection clauses, that all affected parties are parties to the California action and that under either the *Younger* abstention doctrine or the *Colorado River* doctrine, this case should be stayed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this Motion, the following facts are not disputed except where noted. Adobe is a Delaware corporation with its principal place of business in San Jose, California.[3] In October 2009, Adobe finalized its acquisition of a company headquartered in Utah called Omniture.[4] James was a shareholder in and senior vice president of Omniture.[5] As part of the acquisition, James went to work for Adobe pursuant to three contracts.[6]

The first was a September 15, 2009 Employment Agreement with Adobe that had a choice of law provision that Utah law applied ("without regard to the conflicts of law provisions thereof") but had no forum selection clause.[7] The Employment Agreement referenced two additional contracts which were "to be executed contemporaneously" with

---

[3]Complaint ¶ 1.

[4]*Id*. ¶ 7.

[5]*Id*. ¶ 7-8.

[6]*Id*. ¶ 12-14.

[7]Employment Agreement ¶¶ 6.13 (choice of law).

2

the Agreement and annexed thereto and which were to survive James' employment with Adobe.[8] The Employment Agreement had an integration clause that expressly included the other two contracts.[9]

The two contracts referenced and incorporated into the Employment Agreement were the Non-Competition and Non-Solicitation Agreement (Noncompetition Agreement) and the Employee Inventions and Proprietary Rights Assignment Agreement (PRA).

The Noncompetition Agreement was executed on September 15, 2009. It defines the non-competition period as two years following the termination of employment and provides that James will not engage in competition against Adobe and will not become "an officer . . . owner . . . employee . . . or otherwise be associated with . . . any . . . Person that engages . . . in competition" with Adobe.[10]

The Noncompetition Agreement also provides that it "shall be construed in accordance with, and governed in all respects by, the internal laws of the State of Utah (without giving effect to principles of conflicts of laws)."[11] The same section addresses venue as follows:

> (b) Any legal action or other legal Proceeding relating to this Noncompetition Agreement or [its] enforcement . . . *may* be brought . . . in any state or federal court located in the County of Salt Lake, in the State of Utah. Each party to this Noncompetition Agreement: (i) expressly and irrevocably consents and submits to the jurisdiction of each state and federal

---

[8] *Id.* ¶¶ 1.4 and 1.7, 5.1, 5.2.

[9] *Id.* ¶¶ 6.4.

[10] Noncompetition Agreement ¶ 15(f).

[11] *Id*. ¶ 8(a).

appellate court located in the County of Salt Lake, in the State of Utah (and each state and federal appellate court located in the County of Salt Lake, in the State of Utah) in connection with any such Legal Proceeding; (ii) agrees that each state and federal court located in the County of Salt Lake, shall be deemed to be a convenient forum; and (iii) agrees not to assert (by way of motion, as a defense or otherwise), in any such . . . proceeding commenced in state or federal court located in County of Salt Lake, . . . any claim that such party is not subject personally to the jurisdiction of such court, that such Legal Proceeding has been brought in an inconvenient forum, that the venue of such proceeding is improper or that this Noncompetition Agreement or the subject matter of this Noncompetition Agreement may not be enforced in or by such court.[12]

However, the same Noncompetition Agreement also provided that the above venue provision does not "limit or otherwise affect the right of [Adobe] to commence any Legal Proceeding against [James] in any forum or jurisdiction."[13]

The PRA contains a prohibition on James soliciting or encouraging Adobe employees from leaving Adobe's employment during James' employment and for two years thereafter;[14] but limits its prohibition against James from competing with Adobe to only the period of his employment.[15] The PRA provides that it "shall be construed in accordance with, and governed by, the laws of the State of California, as such laws apply to contracts between California residents performed entirely within California.[16] It also provides James "expressly consent[s] to the personal jurisdiction and venue in the state and federal court

---

[12]*Id*. ¶ 8(b) (emphasis added).

[13]*Id*. ¶ 8(c).

[14]PRA ¶ 14(b).

[15]*Id.* ¶ 14(a).

[16]*Id.* ¶ 17.3.

4

for the county in which [Adobe's] principal place of business is located for any lawsuit filed there against [James] by the Company arising from or related to" the PRA. As noted above, Adobe's principle place of business is San Jose, California.

The PRA is not dated, but James concedes that it was signed on the same day as the Noncompetition Agreement. However, James argues that the PRA "became effective after the Noncompetition Agreement"[17] and, as a result, its integration clause operated to supersede what he argues are inconsistent provisions in the Noncompetition Agreement.

James contends that he should be considered a California employee for purposes of California law regarding non-competition agreements—a position Adobe disputes. Adobe submits a declaration stating that James worked for Adobe "from" its offices located in Orem, Utah.[18] James counters with an affidavit stating that the PRA and Noncompetition Agreement were drafted by Adobe, were primarily negotiated and signed in California, and that he spent significant time in California as part of his employment with Adobe.[19]

James left Adobe in July 2010 and signed a Confidential Resignation Agreement in which he agreed to continue to be bound by and comply with the Noncompetition Agreement and the PRA.[20] Unlike the earlier contracts, the Resignation Agreement does not have a choice of law or venue provision.

---

[17] Def.'s Mem. at 5.

[18] Second Weiskopf Dec'l. ¶ 6.

[19] Docket No. 37-1. Because the Declaration is attached to James' Reply, it is not known if Adobe disputes these facts.

[20] Resignation Agreement ¶¶ 8 and 16.

Upon leaving Adobe, James, or an entity he controls, made a substantial investment in Corda Technologies (Corda), a Utah company. James is now Corda's Chief Executive Officer.

In November 2010, Adobe contacted James with its allegation that he was breaching the PRA and Noncompetition Agreement. Adobe specifically alleged that James solicited an Adobe employee in Utah to work for Corda and that Corda was in competition with Adobe. Adobe demanded that James "disentangle" himself from Corda and withdraw any employment offers made by Corda to Adobe employees.[21] Adobe asserted that unless James complied, Adobe would assert its rights under the agreements.[22]

On December 9, 2010, James and Corda filed an action against Adobe in a state court in Santa Clara County, California. The California action has three causes of action. First, Corda's claim for unfair competition based on its allegations that California law applies to the PRA and that it is an unfair, unlawful or fraudulent business practice to seek to enforce the non-solicitation provisions against Corda, James, or any former Adobe employee seeking or accepting employment with Corda. Second, James's claim for declaratory relief that California law applies to the Noncompetition Agreement as well as the PRA; that under California law he may accept employment with Corda; and that the customer non-solicit and employee no-hire provision in the Noncompetition Agreement are unlawful as against California public policy and statutes. In the third claim, James and Corda jointly seek declaratory relief that the PRA supersedes that Noncompetition

---

[21]Docket No. 31 Black Dec'l., Ex. A at 2 (Nov. 22, 2010 letter)

[22]*Id*.

Agreement; that Adobe is estopped from enforcing the Noncompetition Agreement; that the Noncompetition Agreement is overbroad and unenforceable; and that James' employment with Corda is not "competition" within the meaning of the Noncompetition Agreement.

On December 10, 2010, the day following the filing of the California Complaint, Adobe filed the present action against James only. It has four claims for relief. One, for breach of the PRA relating to allegations of soliciting one of its employees. Two, for breach of the Noncompetition Agreement based on James' employment with Corda. Three, for Breach of the Resignation Agreement by allegedly breaching the PRA and Noncompetition Agreements. Four, for breach of the implied covenant of good faith and fair dealing. In each of its causes of action, Adobe seeks preliminary and permanent injunctions against James "and other person acting on his behalf or in concert with him"[23] regarding the PRA, the Noncompetition Agreement, the Resignation Agreement. Adobe also filed a preliminary injunction seeking to enforce the PRA's prohibition against non-solicitation of Adobe employees and against James from serving as an employee or officer or doing business with Corda if it involves certain products that allegedly complete with Adobe.

---

[23] Complaint ¶¶ 40, 48, 56, and 62.

On December 14, 2010, James moved to dismiss or stay this case under the *Younger* abstention doctrine and the *Colorado River* abstention.[24] On January 7, 2011, Adobe moved to stay the California action.[25]

III. DISCUSSION AND CONCLUSIONS

A. *Younger* Abstention

James moves for *Younger* abstention arguing that the two cases are duplicative, that James' California suit was first-filed, that the California case provides an adequate forum to hear Adobe's claims, and that California statutes and case law establish that California has an important state interest in employment as affected by the Noncompetition Agreement and the non-solicit agreement.

Adobe argues that this Motion is a violation of James' agreement not to contest the jurisdiction and convenience of the Utah forum, that this is a Utah-centered dispute in which California has no compelling state interest, and that federal state comity is not implicated and, therefore, *Younger* abstention does not apply.

"For *Younger* abstention to be appropriate, three elements must be present: (1) interference with an ongoing state judicial proceeding; (2) involvement of important state

---

[24] James also filed a January 5, 2011 Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). On February 2, 2011, this Court denied without prejudice Adobe's January 5, 2011, ex parte Motion for immediate and expedited discovery re: its Preliminary Injunction motion.

[25] Docket No. 31 (Weiskopf Decl.) Ex. 3.

8

interests; and (3) an adequate opportunity afforded in the state court proceedings to raise the federal claims."[26]

In a diversity case, *Rienhardt v. Kelly,* the Tenth Circuit has explained that "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court."[27] Therefore, in *Reinhardt*, the Circuit held that *Younger* was not applicable because the trial court was not asked to impose equitable relief that interfered with the related state proceedings."[28]

In support of their respective positions regarding the availability of *Younger* abstention in diversity cases, neither party has been able to cite to controlling case law. James cites a unpublished district court case[29] and a published district court case from Alabama that exercised its discretion under the Declaratory Judgement Act not to entertain

---

[26] *Northern Natural Gas Co. v. Trans Pacific Oil Corp.*, 529 F.3d 1248, 1252 (10th Cir. 2008) (quoting *Southwest Air Ambulance v. City of Las Cruces*, 268 F.3d 1162, 1178 (10th Cir. 2001)).

[27] 164 F.3d 1296, 1302 (10th Cir. 1999).

[28] *Id*.

[29] *Beeler Props. LLC v. Lowe Enters. Residential Investors, LLC*, 2007 U.S. Dist. LEXIS 33434, (D. Colo. May 7, 2007) (assuming subject matter jurisdiction and abstaining under either *Younger* or *Rooker-Feldman*, without addressing whether *Younger* abstention applies in a case without a federal question).

9

a diversity action brought pursuant to that Act.[30]   Adobe relies on various cases but also without one case directly on point.[31]

In the present case, unlike the *Reinhardt* case, Adobe does seek equitable relief that would interfere with the California state court action and, therefore, the Court finds that it may consider *Younger* abstention.  The equitable injunction Adobe seeks in its complaint and motion in the present case would effectively enjoin a party to the California state court cases—Corda—while not joining Corda in this case.   Although Adobe does not directly seek to enjoin the continuation of the California court, such broad injunctions as it seeks in the present case would have the effect of interfering with that proceeding.

This Court finds that the two venue clauses in this case are permissive, and to the extent that they are forum selection clauses, they are also permissive.  The Noncompetition Agreement's venue provision provides that suit "may" be filed in Utah and that James consents to jurisdiction but there is no language indicating the parties' intent to make venue exclusive."[32]  Instead, Adobe expressly retained its own ability to file actions relating to the Noncompetition Agreement "in any forum or jurisdiction."[33]  Further, the PRA specifies that James consents to personal jurisdiction and venue in California for any

---

[30] *The Mut. Life Ins. Co. of New York v. Adams*, 972 F. Supp. 1386, 1389 (N.D. Ala. 1997).

[31] *E.g. Reetz v. Bozanich*, 397 U.S. 82, 86-87 (1970) involved *Pullman* abstention and *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 960 (3d Cir. 1993).

[32] *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 499 (10th Cir. 2002).

[33] *Id*. ¶ 8(c).

claims under the PRA. In short, the two competing clauses do not prevent the filing of the case in California.

While it is clear that there was a race to the courthouse with both sides poised to file, the California case was filed first and this Court finds that the California case involves matters of vital importance under California law. Unlike Utah law, California law reflects a strong public policy regarding non-compete agreements. An unpublished case from this district, *Digicor, Inc. v. E.Digital Corp.*,[34] collects the case law reflecting that strong public policy in California. Adobe argues that even if California law applied, it can rely on the statutory exception from the prohibition of anti-compete clauses as part of a sale of a business rather than the prohibition against anti-competition clauses.[35] James responds that the clauses are nonetheless invalid under California law as overbroad.

The Court finds that California has a clear and consistent strong public policy against anti-competition clauses. How broadly a statutory exception to that policy may be construed directly implicates that policy. The extent to which a California company may avoid its state's policy against anti-competitive clauses by a choice of law provision when the employee alleges that he was "working in California" also implicates that policy.

As to Adobe's argument that this is a Utah-centered dispute, the Court notes that the anti-solicitation provision is to be construed under California law and, on its face, applies to all Adobe employees, not just those currently working in Utah.

---

[34] 2009 WL 706888 (D. Utah Mar. 13, 2009).

[35] *E.g.* Cal. Bus. and Prof. Code §§ 16600 and 16601.

Adobe argues that the California state court proceeding does not afford it an adequate opportunity to raise the claims raised in this federal action because it does not involve the Resignation Agreement. However, Adobe's claim for violation of the Resignation Agreement is entirely dependent on its claims for the violation of the PRA and Noncompetition Agreement. Thus, the Court finds that the California state court action does afford an adequate opportunity to Adobe to address the claims herein.

On balance, the Court finds that *Younger* abstention is appropriate in favor of the earlier-filed California state case.

B.  *Colorado River*

Even if *Younger* abstention were not available in this diversity case because there are no federal claims, the Court finds that a *Colorado River* stay is appropriate. In *Colorado River*, the Supreme Court announced that although certain abstention doctrines might not apply in a case, "judicial economy concerns may justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case."[36] However *Colorado River* is a limited doctrine:

> Because the *Colorado River* Doctrine springs from the desire for judicial economy, rather than from constitutional concerns about federal-state comity, and because the *Colorado River* Doctrine is an exception to our jurisdictional mandate from Congress, the Doctrine may only be used when "the clearest of justifications . . . warrants dismissal." Thus, while *Colorado River's* judicial economy goals allow a federal court to avoid the "virtually unflagging obligation . . . to exercise the jurisdiction given it," the appropriate circumstances for deferral under the *Colorado River* Doctrine are

---

[36]*Rienhardt*, 164 F.3d at 1302.

"considerably more limited than the circumstances appropriate for abstention" and must be "exceptional."[37]

Before examining the *Colorado River* factors to consider in determining if "exceptional circumstances exist" . . . "a federal court must first determine whether the state and federal proceedings are parallel."[38] "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."[39] "[T]he better approach is to examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings."[40]

> [This] approach heeds the Supreme Court's admonition in *Moses H. Cone* that to grant a stay or dismissal under the *Colorado River* doctrine would be "a serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties. . . . [T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."[41]

This Court finds that the California action is parallel to this action. It involves the same parties, Adobe and James. The California action also includes Corda as a party. It is still parallel with the addition of Corda because it is James' employment/ownership with Corda that Adobe seeks to prevent. The California case arises from the exact same facts.

---

[37]*Id*. at 1303 (quoting *Colorado River*, 424 U.S. at 818-19 (alternations omitted)).

[38]*Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994).

[39]*Id*. (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)).

[40]*Id.*

[41]*Id*. (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 19, 28 (1983)).

Because Adobe's claim in this action for violation of the Resignation Agreement is wholly dependent on its allegations that James violated that Agreement by violating the PRA and Noncompetition Agreements, all of the claims between James and Adobe involve the same disputed issues of fact as will be litigated in the California forum. The form of the relief sought in the different forums—injunction and damages compared to declaratory relief—does not affect the parallel nature of the suits because the relief sought all depends on resolution of the identical issues arising from the same two contracts.

The Court next turns to the factors to determine if this case is exceptional. As explained in *Fox v. Maulding* those factors include: "whether either court has assumed jurisdiction over property"; "the inconvenience of the federal forum"; "the desirability of avoiding piecemeal litigation;" "the order in which the courts obtained jurisdiction;" "the vexatious or reactive nature of either the federal or the state action"; "whether federal law provides the rule of decision;" "the adequacy of the state court action to protect the federal plaintiff's rights" and "whether the party *opposing* abstention has engaged in impermissible forum-shopping."[42] As further explained

> No single factor is dispositive; "[t]he weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Rather than use the factors as a "mechanical checklist," a court should engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[43]

---

[42] *Id*. (quoting *Colorado River*, 824 U.S. at 818 (numbering omitted) and *Moses H. Cone*, 460 U.S. at 18 n.20, 23, and 28) (emphasis added and additional citation omitted).

[43] *Id*. (quoting *Moses H. Cone*, 460 U.S. at 16).

The Court finds that there is no res at issue in this case and therefore, that factor does not affect the balancing. The federal forum is as convenient for the parties as the state forum. There are important witnesses in both states. Further, even if this forum were less convenient, because James agreed not to assert inconvenience the Court would not consider that factor in his favor.

On the factor of forum shopping, there was an attempt by both sides at forum shopping, but there is nothing to show that it was impermissible by either side because each filed an action in a forum permitted by the venue selection clauses of their contracts. As discussed above, those clauses are merely permissive. The California court case was filed only one day before this case, but that court still obtained jurisdiction before this Court. Both cases appear reactive. The California case was reactive to the threats by Adobe to enforce its rights, and this case was filed in reaction to the filing of the California case.

On balance, the factors that do make this case exceptional are the desirability of avoiding piecemeal litigation, that federal law does not provide any rule of decision, and that the state court action is entirely adequate to protect Adobe's rights. Not only is there no federal law involved in this case, as discussed above, California has a very strong public policy involving non-compete agreements and non-solicitation agreements. California courts have held that the policy is reflected in its statutes, two of which are at issue in the parties's disputes.[44] James seeks to invalidate one contract's provisions based on his claim that he was employed in California. He also seeks to have provisions of both declared unenforceable under California law based on his arguments that they are

---

[44] *E.g.* Cal. Bus. and Prof. Code §§ 16600 and 16601.

overbroad. If this Court did not stay this action pending the California court's determination on such issues, there is a real possibility of inconsistent decisions on issues for which California has a very strong public policy.

Because Corda is a party to only the California action, piecemeal litigation is highly likely if this case is not stayed. Corda's claim for unfair competition under California law is based on Adobe's attempt to enforce the PRA's non-solicitation provisions against Corda, its employee James, and any former Adobe employee seeking or accepting employment with Corda. Corda can proceed with its unfair competition claim against Adobe in California. Such piecemeal litigation and the problem of potentially inconsistent rulings regarding the PRA can be entirely avoided by a stay of this case. At the same time, the California action is entirely adequate to protect Adobe's rights raised in this federal diversity action. Accordingly, this Court finds that on the facts of this case that it is the exceptional case warranting a stay under *Colorado River*.

## IV. ORDER

It is therefore

ORDERED that Defendant's Motion to Dismiss or Stay (Docket No. 2) is GRANTED and this case is STAYED. It is further

ORDERED that all pending motions are DENIED WITHOUT PREJUDICE because this case is stayed. It is further

The Clerk of Court is directed to administratively close this case.

DATED   February 15, 2011.

                                  BY THE COURT:

                                  _____
                                  TED STEWART
                                  United States District Judge